## Case No. 16,208.

### UNITED STATES v. RUNDLETT.

[2 Curt. 41.][1]

Circuit Court, D. New Hampshire. Oct. Term, 1854.

UNITED STATES COMMISSIONERS — CRIMINAL COMPLAINTS—AUTHORITY TO TAKE BAIL— RECOGNIZANCES—DEFAULT.

1. A commissioner, appointed to take affidavits, &c., under the acts of congress, has power to let to bail, one brought before him on a criminal complaint, pending the proceedings; in those states where justices of the peace have a similar power; and a recognizance to appear before him to have the proceedings completed is valid.

[Approved in U. S. v. Case, Case No. 14,-742. Cited in U. S. v. Horton, Id. 15,-393; U. S. v George, Id. 15,199; U. S. v. Evans, 2 Fed. 151; U. S. v. Martin, 17 Fed. 155; Ex parte Perkins, 29 Fed. 909; Rand v. U. S., 36 Fed. 672; Marvin v. U. S., 44 Fed. 410. Cited in U. S. v. Ewing, 140 U. S. 144, 11 Sup. Ct. 743; U. S. v. Keiver, 56 Fed. 425; Re Acker, 66 Fed. 294; Hallett v. U. S., 63 Fed. 822; Hudson v. Parker, 156 U. S. 282, 15 Sup. Ct. 452; U. S. v. Hudson, 65 Fed. 77; Re Dana, 68 Fed. 893.]

[Cited in Re Mantz, 19 D. C. 598; U. S. v. Eldredge (Utah) 13 Pac. 679.]

[1] [Reported by Hon. B. R. Curtis, Circuit Justice.]

2. Such a commissioner has power to adjourn to another time and place, as incident to the power to hear and determine; but he cannot adjourn in the absence of the accused.

[Cited in Re Ewing, Case No. 4,587.]

3. In New Hampshire, one under a recognizance to appear before an examining commissioner at his office at ten o'clock, a. m., is not in default for not appearing precisely at ten o'clock, nor before the expiration of that hour,— nor is he bound to appear elsewhere than at the commissioner's office.

[Cited in Re Gilley, Case No. 5,438; Re Ewing, Id. 4,587.]

4. The condition of a recognizance to appear before a commissioner can be shown to be broken, only by calling the cognizor at the time and place, when and where he was bound to answer, and making an entry of his default to appear on the minutes of the commissioner which he returns to the court.

[Cited in Marvin v. U. S., 44 Fed. 411.]

[Cited in Brooks v. U. S. (N. M.) 27 Pac. 311; Philbrick v. Buxton, 43 N. H. 463; State v. Kinne, 39 N. H. 138.]

5. It is not sufficient to aver and prove aliunde, that the cognizor had in fact absconded, and did not intend to appear, and could not have appeared if he had been called.

Marston & Emery, in support of the demurrer.

Mr. George, U. S. Dist. Atty., contra.

CURTIS, Circuit Justice. This is an action of debt [against Harrison G. O. Rundlett] on a recognizance. The amended declaration, which is demurred to, shows that one Woodbury Gilman was complained of, before Horace Webster, one of the commissioners appointed by the circuit court of the United States for the district of New Hampshire, and therein was charged with the crime of presenting to the commissioner of pensions certain false and fraudulent papers for the purpose of obtaining an allowance of a claim for a pension, and the payment of a sum of money from the United States in satisfaction of such claim. That the said Gilman was arrested and brought before the commissioner at his office in Portsmouth, on the 30th day of August, 1853, and such proceedings were thereupon had that Gilman was ordered by the commissioner to recognize in the sum of $2,500, with three sureties, in the sum of $833 33-100 each, to be and appear before the commissioner at his office in Portsmouth on the first day of September then next, at ten of the clock in the forenoon, further to answer to the said complaint, and then and there wait and abide the order of the said commissioner; that the said Gilman and three sureties, of whom the defendant was one, did so recognize. That Gilman did not appear at the office of the commissioner on the first day of said September, at ten of the clock in the forenoon, according to the tenor of his recognizance; and the commissioner adjourned to the court house in Portsmouth, at the same hour, and then and there Gilman was three times solemnly called, and made default, and the sureties were also then and there three times solemnly called to bring in the body of their principal, but did not appear, or bring the principal, and so default was made in the condition of the recognizance, and the same was declared by the commissioner to be forfeited; all which will appear by the record, &c.

Several questions have been argued upon the demurrer. The first is, whether the commissioner had authority to take the recognizance of a defendant, with surety, to appear before himself. It is argued that the powers of a commissioner, in this particular, are the same as those of a justice of the peace; that at common law, a justice of the peace cannot order a prisoner to recognize to appear before himself; that though there is, by statute in New Hampshire, as in other states, authority conferred on justices of the peace to let to bail persons accused before them, while the complaint is pending, and no order has been made thereon, there is no act of congress which confers this power on commissioners. By the first section of the act of August 23, 1842 (5 Stat. 516), it is provided, that the commissioners shall exercise all the powers that any justice of the peace, or other magistrate of any of the United States may now exercise, in respect to offenders for any crime or offence against the United States, by arresting, imprisoning, or bailing the same, under and by virtue of the thirty-third section of the act of September 24, 1789 (5 Stat. 91). To that section we must look for the powers of the commissioners over this subject; and it provides that, for any crime or offence against the United States, the offender may, by any justice or judge of the United States, or by any justice of the peace, or other magistrate of any of the United States where he may be found, agreeably to the usual mode of process against offenders in such state, be arrested and imprisoned or bailed, as the case may be, for trial before such court of the United States, &c.

My opinion is, that it was the intention of congress by these words, "agreeably to the usual mode of process against offenders in such state," to assimilate all the proceedings for holding accused persons to answer before a court of the United States, to the proceedings had for similar purposes by the laws of the state where the proceedings should take place; and, as a necessary consequence, that the commissioners have power to order a recognizance to be given to appear before them, in those states where justices of the peace, or other examining magistrates, acting under the laws of the state, have such power; as they have in New Hampshire, by the Revised Statutes (page 564, § 8). It is, perhaps, admissible, to consider the taking of a recognizance, to be strictly, and literally, within the meaning of the word "process." See Beers v. Houghton, 9 Pet. [34 U. S.] 329; U. S. v. Knight, 14 Pet. [39 U. S.] 301. But

if not so, I consider the words "mode of process," as used in this law, to be synonymous with mode of proceeding, and to include power to let to bail. This must be so, because the law expressly says, the prisoner is not only to be arrested and imprisoned, but bailed, agreeably to the usual mode of process in the state; and though this refers to his being bailed to appear and answer before the court, it shows that the words "mode of process" were not confined to the form of the warrant or mittimus, but were used in the larger sense above mentioned. See Duncan v. Darst, 1 How. [42 U. S.] 306, and cases there cited; and Gwin v. Breedlove, 2 How. [43 U. S.] 29. This objection must therefore be overruled.

The next objection is more formidable. It is that the condition of the recognizance required the principal to appear at the office of the commissioner at ten o'clock; that the legal effect of this was, that he had until eleven o'clock to appear; that he was not bound to appear at any other place; that the recognizance could not be forfeited, without calling him at the commissioner's office, and entering his default for non-appearance there; that the adjournment to the court house, at ten o'clock, did not impose on the accused a duty to follow the commissioner, and make his appearance there before eleven o'clock; and, consequently, when he failed to answer the call at the court house, he was not thereby in default, and so there was no forfeiture.

To maintain an action on a recognizance, the declaration must show a breach of its condition. And as the recognizance is required and taken by the commissioner pursuant to an authority conferred on him by law, and to satisfy certain legal requirements, the nature, extent, and limitations of the responsibility created thereby, are to be determined, not by a mere examination of the terms of the instrument, but also by reference to the rules of law which are applicable thereto. These rules apply themselves to the terms of the condition, and affect their meaning and operation. Beers v. Houghton, 9 Pet. [34 U. S.] 329; U. S. v. Knight, 14 Pet. [39 U. S.] 301. One of these rules of law requires the principal cognizor to be called, and his default entered; and the legal effect of the condition is such, that it is not broken by non-appearance, generally, to be proved by any evidence, but only by non-appearance in answer to a call, to be proved by an entry made on the minutes of the magistrate, and returned by him as part of the proceedings. This has been decided in New Hampshire, and elsewhere, upon reasons, which, to me, are satisfactory. State v. Chesley, 4 N. H. 366; Dillingham v. U. S. [Case No. 3,913]; State v. Grigsby, 3 Yerg. 280; White v. State, 5 Yerg. 183; Park v. State, 4 Ga. 329. It is clear also that the declaration must show a default to answer to a call, made at a time and place, when and where the cognizor was bound by law to answer. And the question here is, whether Gilman was bound by law to answer the call made at the court house. By the terms of the recognizance, he was to appear at the office of the commissioner, at the hour of ten o'clock in the forenoon, and then and there further answer to the complaint, and wait and abide the order of the said commissioner. Any lawful order which the commissioner was empowered to pass in the course of proceedings upon this complaint, is within the very terms of the condition. If he had appeared, and the hearing had not been finished on that day, and the commissioner had adjourned the hearing to the next day, the defendant would undoubtedly have been bound by the recognizance to appear on the next day. The commissioner also had power to make an order to adjourn to a more convenient place, for the purpose of hearing the complaint. This power is incident to the power to hear and determine. It includes adjournments both of time and place. Where, as in some of the states, the power is regulated by statute, of course those statute limits must be observed. Where it has not been thus regulated, it must be a reasonable exercise of the power, in reference to the circumstances of the case, for the purpose of more conveniently, or speedily, or safely, discharging the duty of examining the complaint. Morrell v. Near, 1 Cow. 112; Caswell v. Ward, 2 Doug. (Mich.) 374.

In this case no objection is made to the mode of exercising this power, save that the order to adjourn was made in the absence of the defendant, and before he was bound to be present. That the order to adjourn was made in his absence, is averred by the amended declaration. That it was made at ten o'clock in the forenoon is also averred. I do not think he was bound to be present before, or precisely at ten o'clock. I have always understood it to be part of the common law of the New England states, and I believe it is so held in other states, that in proceedings before magistrates, which are notified to begin at a fixed hour, neither party is in default, until the expiration of that hour and the commencement of the next. This is a convenient rule, prevents surprise, and exacts as much promptness as is safe and reasonable. It seems quite clear from the case of Downer v. Hollister, 14 N. H. 122, that it is part of the law of this state.

Under these circumstances I am of opinion the commissioner had not lawful authority to make the order to adjourn, that the order was not binding on the defendant, so as to oblige him to answer at the court house, and consequently that his failure to answer there was not a breach of the condition of the recognizance,—and this for the following reasons: The general rule is that in criminal proceedings, no action affecting any right of the accused should take place in his absence. In this particular case it might be of no importance to the defendant whether the adjournment took place in his absence or

not. In many cases it might be of practical importance. I cannot consent to make a precedent, which might be used injuriously to the substantial rights of persons examined for offences by magistrates. When they have bound themselves to appear before a magistrate and answer to a complaint at a particular place, they must be allowed an opportunity to appear there, and offer such reasons as they may have, why they should not be compelled to answer elsewhere; and those reasons must be considered by the magistrate, before they are required to answer at another place. As has already been said, the power to adjourn is incident to the power to hear and determine. But if the defendant avoids, there is no hearing or determination. Until he appears, therefore, there is no power to hear and determine, and consequently, a power to adjourn, which is merely incidental to the power to hear, and which is to be exercised, if at all, only for the more convenient, safe, or speedy execution of the principal power, not only need not be exerted, but can hardly be said to exist. If the defendant had been in any default, for not being present at the time the order to adjourn was made, it might be urged, perhaps, that he was bound to take notice of the adjournment, and to follow the commissioner to the court house. Adjournments by courts of record thus bind persons who are under recognizance. But, as has already been declared, his appearance at any time before eleven o'clock, at the office of the commissioner, would satisfy the condition of the recognizance; and I can make no distinction between an order of the commissioner to adjourn at ten o'clock, before he appeared, and an order at nine o'clock, or any earlier hour. In neither case, was the defendant bound to be present, or in default for not being present; and I do not perceive upon what ground he could be required to take notice of and obey the order of adjournment in one case, ratner than in the other.

Several cases in the state of New York have been decided upon principles somewhat analogous to those stated: Wiest v. Critsinger, 4 Johns. 117; Stewart v. Meigs, 12 Johns. 417; Morrell v. Near, 1 Cow. 112.

It was stated at the bar that Gilman, the defendant, actually absconded, and had no intention to appear, and did not, nor would, at any time or place, appear to answer the complaint; that this was well known to his sureties, and that it was of no practical importance to him or them whether the adjournment took place or not. This may be so; but the case must be decided upon fixed principles of law, applicable to all cases of such recognizances taken by magistrates, and whatever the intentions or acts of Gilman may have been, if there was no breach of the condition of the recognizance, no recovery can be had. Being of opinion that there was no breach, the judgment must be for the defendant.