## UNITED STATES v. SAUER et al.

### (District Court, W. D. Texas. April 6, 1896.)

### No. 34.

1. CRIMINAL PROCEDURE—EXAMINATION OF ACCUSED PERSONS—REV. ST. § 1014.

    Under Rev. St. § 1014, which assimilates all the proceedings for holding persons accused of crime to answer before a court of the United States to proceedings had for similar purposes under the laws of the state where the proceedings take place, all the regulations and steps incident to the proceeding before a United States commissioner, from its commencement to its close, are guided by the state laws, so far as they may be applicable to the federal courts, if no rule upon the same subject has been prescribed by the federal statutes.

2. SAME—HOLDING TO BAIL—POWER OF UNITED STATES COMMISSIONER.

    The authority, therefore, of a United States commissioner to take bail for the appearance of an accused person to answer further before such commissioner to the charge against him is dependent upon the existence of such authority in examining magistrates under the laws of the state in which the proceedings before the commissioner are pending.

3. SAME—TEXAS STATUTE.

    Such magistrates have the power under the statute of Texas, and accordingly United States commissioners sitting in that state have the same.

4. SAME—FORM OF BAIL BOND.

    The form of a bail bond taken by a United States commissioner should conform, in all substantial particulars, to the requirements of the laws of the state in which the commissioner is sitting, so far as such laws are applicable.

5. SAME—TEXAS STATUTE—RECEIVING SMUGGLED GOODS.

    The statute of Texas makes it a requisite of a bail bond that the offense of which the defendant is accused be distinctly named, and that it appear therefrom that he is accused of an offense against the laws of the state. Accordingly, *held*, that a bail bond, taken by a United States commissioner sitting in Texas, which states that the defendant is charged with receiving and concealing smuggled goods, but does not state that he did so knowing the same to be smuggled, is invalid, since the receipt or concealment of smuggled goods is not an offense against the United States unless they are known to be smuggled.

R. U. Culberson, U. S. Atty.

Falvey & Davis and W. M. Coldwell, for defendants.

MAXEY, District Judge. This suit was instituted by the United States, through the district attorney, to recover the penalty of a bail bond, in the sum of $1,000, executed by George Sauer as principal and J. C. Lackland and Richard Caples as sureties. It is alleged in the petition that the complaint upon which Sauer was arrested was made before F. B. Sexton, a circuit court commissioner at El Paso, on the 12th day of October, A. D. 1894, and, pending the preliminary examination before the commissioner, the defendant Sauer was required to enter into a bond, payable to the United States, to make his personal appearance before the commissioner, at his office in El Paso, on the 1st day of November, 1894, to further answer the complaint, and there remain from day to day until by the commissioner discharged.

The bond, which is duly signed by Sauer, Lackland, and Caples, is in these words:

"The United States of America, Western District of Texas.

"Know all men by these presents, that we, George Sauer, of El Paso county, as principal, and J. C. Lackland, of El Paso county, and Richard Caples, of El Paso county, as sureties, acknowledge ourselves to owe and stand indebted unto the United States of America in the sum of one thousand dollars, for the payment of which, well and truly to be made, we hereby do jointly and severally bind ourselves, our heirs, and legal representatives. Conditioned to be void if the above-named George Sauer shall well and truly make his personal appearance before F. B. Sexton, commissioner of the circuit court of the United States for the Western district of Texas, at El Paso, at the office of said commissioner, on the 1st day of November, 1894, and there remain from day to day until discharged by the commissioner, to answer the United States in a complaint filed against him, the said George Sauer, in said commissioner's court, charging him with having and receiving into his possession and concealing smuggled goods.

"Witness our hands this 16th day of October, in the year of our Lord one thousand eight hundred and ninety-four."

It is further alleged that the hearing continued until the 8th day of November, at which time Sauer failed to appear, and the bond was duly declared forfeited by the commissioner. Greater particularity in reciting the cause of action becomes unnecessary in view of the questions raised upon the demurrers.

The defendants appeared, by their attorneys, and interposed several demurrers to the petition, which may be properly and conveniently embodied in the two following: (1) A general demurrer; (2) a special demurrer, as follows:

"That said bond set out in the plaintiff's petition charges that defendants obligated themselves that said Sauer should appear [at the time and place therein mentioned] to answer the United States in a complaint filed against him, the said George Sauer, in said commissioner's court, charging him with having and receiving into his possession and concealing smuggled goods; that there is no offense charged, the said bond not charging that said George Sauer knew that said goods had been or were smuggled goods."

Under the general demurrer the question is presented whether the commissioner had authority to take a bond with surety for the appearance of the defendant before himself. And the answer to this inquiry must necessarily depend upon the law by which circuit court commissioners are governed in admitting to bail persons who are charged before them with the commission of crime. The power of commissioners to act as committing magistrates is conferred by section 1014, Rev. St. U. S., which is in the following language:

"For any crime or offense against the United States, the offender may, by any justice or judge of the United States, or by any commissioner of a circuit court to take bail, or by any chancellor, judge of a supreme or superior court, chief or first judge of common pleas, mayor of a city, justice of the peace, or other magistrate, of any state where he may be found, and agreeably to the usual mode or process against offenders in such state, and at the expense of the United States, be arrested and imprisoned, or bailed, as the case may be, for trial before such court of the United States as by law has cognizance of the offense."

The question whether, under this statute, the commissioner has authority to take bail for the appearance of a defendant before him-

self, has been considered by the courts in several cases; and it has been uniformly ruled, so far as the court is advised, that such power exists only when it is conferred upon examining magistrates by the laws of the state in which the proceeding takes place. And, on the other hand, the power has been denied in a case where the state statutes did not confer it upon committing magistrates. The cases of U. S. v. Rundlett, 2 Curt. 41–48, Fed. Cas. No. 16,208, and 12 Myers, Fed. Dec. § 1525, and U. S. v. Horton, 2 Dill. 94, Fed. Cas. No. 15,393, come within the first category, and U. S. v. Case, 8 Blatchf. 250–254, Fed. Cas. No. 14,742, and 12 Myers, Fed. Dec. § 1529, is embraced within the second.

In the three cases cited the decisions are based upon the ground that, under section 1014, Rev. St., the courts are relegated to the state statutes to ascertain and determine the nature and extent of the duties and powers of commissioners in arresting, imprisoning, and bailing persons accused of offenses against the United States. Thus, in Rundlett's Case, it is said by Mr. Justice Curtis that, in his opinion:

"It was the intention of congress by these words, 'agreeably to the usual mode of process against offenders in such state,' to assimilate all the proceedings for holding accused persons to answer before a court of the United States to the proceedings had for similar purposes by the laws of the state where the proceedings should take place; and, as a necessary consequence, that the commissioners have power to order a recognizance to be given to appear before them in those states where justices of the peace or other examining magistrates, acting under the laws of the state, have such power."

In U. S. v. Horton, supra, it is said by Judge Dillon that:

"Whatever authority the commissioner has in respect to the arresting, imprisoning, or bailing of criminal offenders is conferred by statute, and must be exercised by him pursuant to its requirements. Congress has not seen fit to prescribe a uniform mode of its own in respect to preliminary proceedings against persons accused of a violation of its criminal enactments, but in the thirty-third section of the judiciary act it is provided that the procedure in such cases should be 'agreeably to the usual mode of process against offenders in such state'; that is, in the state in which the offenders may be arrested and the proceedings had. To this section we must resort to ascertain the powers of commissioners in respect to the arrest, imprisonment, and bail of offenders against the laws of the United States."

And in U. S. v. Case, supra, where the commissioner was held to be without power to take a recognizance conditioned for the appearance of the accused before himself for further examination, because the laws of New York conferred no such authority upon committing magistrates, Judge Woodruff employs this language in reference to the ruling of Mr. Justice Curtis:

"It is quite clear, I think, that the thirty-third section of the judiciary act of 1789 (1 Stat. 91) was rightly construed by Judge Curtis in U. S. v. Rundlett, 2 Curt. 41, Fed. Cas. No. 16,208, and that, in a state where a justice of the peace has power to take a recognizance to appear from day to day pending the examination of an accused, there a United States commissioner has such power."

In the case of U. S. v. Evans, 2 Flip. 605, 2 Fed. 147, and 12 Myers, Fed. Dec. § 1534, Judge Hammond says:

"The federal courts are bound, in this matter of taking bail in criminal cases, by the state laws, by express command of the statutes."

It is said by Judge Bunn, in U. S. v. Keiver, 56 Fed., at page 425, that section 1014—

"Evidently refers the details of the proceeding to the state statute, and it is by that law that we must determine their regularity and validity."

Construing the same section of the Revised Statutes, it is said by Judge Deady, in U. S. v. Martin, 17 Fed. 155, 156, that this section—

"Is the authority under which a commissioner of the circuit court acts when engaged in a proceeding for the arrest, commitment, or bail of a person charged with crime against the United States, and such section provides that he shall proceed therein 'agreeably to the usual mode of process' against offenders in such state. A commissioner, acting under this statute, is simply a committing magistrate. The ambiguous phrase, 'mode of process,' is interpreted to mean 'mode of proceeding,' and this proceeding is according to the law of the state in similar cases. U. S. v. Rundlett, 2 Curt. 42, Fed. Cas. No. 16,208; In re Martin, 5 Blatchf. 307, Fed. Cas. No. 9,151; U. S. v. Case, 8 Blatchf. 250, Fed. Cas. No. 14,742. The validity of the process and order in question must, then, be determined by reference to the laws of Oregon for the arrest, examination, and commitment of persons charged with the commission of crime against the laws of the state."

See, also, U. S. v. Insley, 4 C. C. A. 296, 54 Fed. 223.

In considering the question of fees due to commissioners for services performed in obedience to section 1014, Mr. Justice Brown, citing the Cases of Rundlett and Horton, supra, in U. S. v. Ewing, 140 U. S., at page 144, 11 Sup. Ct. 743, says:

"As this section requires proceedings to be taken 'agreeably to the usual mode of process against offenders in such state,' it is proper to look at the law of the state in which the services in such case are rendered to determine what is necessary and proper to be done, and inferentially for what services the commissioner is entitled to payment."

And in U. S. v. Patterson, 150 U. S., at page 67, 14 Sup. Ct. 20, Mr. Justice Brewer, speaking for the court, uses this language:

"It was held, in the case of U. S. v. Ewing, 140 U. S. 142, 11 Sup. Ct. 743, that, in view of section 1014 of the Revised Statutes, the law of the state in which the services are rendered must be looked at in order to determine what is necessary in the matter of procedure."

Upon careful consideration of section 1014 of the Revised Statutes and authorities above cited, the following conclusions are derived: (1) Section 1014 assimilates all the proceedings for holding accused persons to answer before a court of the United States to the proceedings had for similar purposes under the laws of the state where the proceedings take place. (2) The term, "agreeably to the usual mode of process against offenders in such state," as used in the statute, should be so construed as to include all the regulations and steps incident to the proceeding before the commissioner from its commencement to its termination, as prescribed by the state laws, so far as they may be applicable to the federal courts. (3) The authority of the commissioner, therefore, to take bail for the appearance of an accused person to further answer the charge before him is existent or nonexistent accordingly as it may be conferred upon or denied to examining magistrates by the laws of the state in which the proceedings before the commissioner may be

pending. (4) Bail bonds, taken by the commissioner, should conform in all substantial particulars to the requirements of the state laws, so far as such laws may be applicable to the federal courts.

It follows that resort must be had to the statutes of this state to determine (1) whether Commissioner Sexton had authority to take the bond in question; and (2) whether such bond, as measured by the laws of Texas, is legally sufficient.

The following articles of the Texas Code of Criminal Procedure bear upon the questions to be decided:

"Art. 259. When a person accused of an offense has been brought before a magistrate, that officer shall proceed to examine into the truth of the accusation made, allowing the accused, however, sufficient time to procure the aid of counsel.

"Art. 260. The magistrate may, at the request of the prosecutor or person representing the state, or of the defendant, postpone for a reasonable time the examination so as to afford an opportunity to procure testimony, but the accused shall, in the meanwhile, be detained in the custody of the sheriff or other duly authorized officer, unless he give bail to be present from day to day before the magistrate, until the examination is concluded, which he may do in all cases, except murder and treason.

   *     *     *     *     *     *     *     *     *     *     *     *

"Art. 284. A 'bail bond' is an undertaking entered into by the defendant and his sureties for the appearance of the principal therein before some court or magistrate to answer a criminal accusation; it is written out and signed by the defendant and his sureties.

"Art. 285. A bail bond is entered into either before a magistrate upon an examination of a criminal accusation against a defendant, or before a judge upon an application under habeas corpus; or it is taken from the defendant by a peace officer who has a warrant of arrest or commitment, as hereafter provided.

"Art. 286. Wherever the word 'bail' is used with reference to the security given by the defendant, it is intended to apply as well to recognizances as to bail-bonds. When a defendant is said to be 'on bail,' or to have 'given bail,' it is intended to apply as well to recognizances as to bail bonds.

   *     *     *     *     *     *     *     *     *     *     *     *

"Art. 288. A bail bond shall be sufficient if it contain the following requisites: (1) That it be made payable to the state of Texas. (2) That the obligors thereto bind themselves that the defendant will appear before the proper court or magistrate to answer the accusation against him. (3) That the offense of which the defendant is accused be distinctly named in the bond, and that it appear therefrom that he is accused of some offense against the laws of the state. (4) That the bond be signed by the principal and sureties, or in case all or either of them cannot write, then that they affix thereto their marks. (5) That the bond state the time and place when and where the accused binds himself to appear, and the court or magistrate before whom he is to appear. In stating the time it is sufficient to specify the term of the court; and in stating the place it is sufficient to specify the name of the court or magistrate and of the county.

"Art. 289. The rules laid down in this chapter respecting recognizances and bail bonds are applicable to all such undertakings when entered into in the course of a criminal action, whether before or after indictment or information, in every case where authority is given to any court, judge, or magistrate or other officer, to require bail of a person accused of an offense, or of a witness in a criminal action.

   *     *     *     *     *     *     *     *     *     *     *     *

"Art. 307. The rules laid down in the preceding articles of this chapter, relating to the amount of the bail, the number of sureties, the person who may be surety, the property which is exempt from liability, the form of bail bonds, the responsibility of parties to the same, and all other rules in this chapter of a general nature, are applicable to bail taken before an examining court."

It will be observed that article 260 of the Code of Criminal Procedure of this state expressly authorizes the examining magistrate to postpone the examination for a reasonable time to afford the opportunity of procuring testimony, but, employing the words of the statute, "the accused shall in the meanwhile be detained in the custody of the sheriff or other duly authorized officer, unless he give bail to be present from day to day before the magistrate, until the examination is concluded, which he may do in all cases, except murder and treason." Examining magistrates in Texas, therefore, having power to admit accused persons to bail for their appearance from day to day pending the examination, commissioners of the circuit court of the United States have like powers in this state. To avoid being misunderstood, it is deemed not inappropriate to here repeat what has, in effect, been already said, that the statutes of the state should govern commissioners in the matter of arresting, imprisoning, and admitting to bail accused persons, so far as they may be applicable to the federal courts, but in no case should they be held applicable where the federal statutes have prescribed a rule upon the same subject.

The remaining question to be considered is specifically pointed out by the special demurrer of defendants, although included within the general demurrer, and it challenges the sufficiency of the bond. It is objected to the bond that it describes no offense against the laws of the United States, in that it fails to recite want of knowledge on the part of Sauer that the smuggled goods, in his possession and concealed, had been smuggled or imported contrary to law. The bond, as before shown, is conditioned for the appearance of Sauer "to answer the United States in a complaint filed against him, the said George Sauer, in said commissioner's court, charging him with having and receiving into his possession and concealing smuggled goods."

The statute upon which the complaint is predicated reads as follows:

"If any person shall fraudulently or knowingly import or bring into the United States, or assist in so doing, any merchandise, contrary to law. or shall receive, conceal, buy, sell or in any manner facilitate the transportation, concealment or sale of such merchandise after importation, knowing the same to have been imported contrary to law, such merchandise shall be forfeited and the offender shall be fined in any sum not exceeding five thousand dollars, or be imprisoned for any term not exceeding two years, or both." Rev. St. U. S. § 3082.

The third clause of article 288 of the Texas Code of Criminal Procedure, hereinbefore set out, provides:

"That the offense of which the defendant is accused be distinctly named in the bond, and that it appear therefrom that he is accused of some offense against the laws of the state."

Does it appear from Sauer's bond that he is accused of an offense against the laws of the United States? Manifestly not. Guilty knowledge is the gist and essence of the offense attempted to be described in the bond. Section 3082 of the Revised Statutes does not make the mere receipt or concealment of smuggled goods an of-

fense. There must be, on the part of the person receiving or concealing the goods after their importation, knowledge of their illegal importation. Cases falling under this section of the statutes have been repeatedly before this court, and the ruling has been uniform that the jury was not authorized to convict unless the possession or concealment of the goods was accompanied with knowledge on the part of the possessor that they had been smuggled or imported contrary to law. It is evident that it does not appear from the bond that Sauer is charged with any offense against the laws of the United States, and hence the bond is not binding upon him or his sureties. See U. S. v. Hand, 6 McLean, 274, Fed. Cas. No. 15,296; U. S. v. Goldstein's Sureties, 1 Dill. 413, Fed. Cas. No. 15,226; and the four Cases of Horton, Rundlett, Case, and Keiver, supra.

The conclusion reached by the court is sustained by the supreme court and court of criminal appeals of this state, as a reference to the authorities will clearly show. Thus, in Dailey v. State, 4 Tex. 419, the supreme court says:

"The undertaking of the party contained in the recognizance or bond is to appear and answer to a charge simply of 'having in his possession stolen goods,' and the scire facias follows the recognizance in its description of the charge. We know of no law which makes this an indictable offense, or which authorizes the taking of a recognizance to answer this charge. The mere fact of having in possession stolen goods is not a crime. The possession may be lawful, and would not be criminal unless accompanied with a criminal scienter or felonious intent. The possession of stolen goods may be evidence to support a charge of larceny, but it does not, of itself, constitute that crime. As evidence, it is by no means conclusive, but is but presumptive, and is stronger or weaker according to the circumstances attending the possession. 2 Starkie, Ev. 449, 480; 1 Phil. Ev. 168. It is manifest that the present is a very different charge from that of receiving stolen goods knowing them to be stolen. And, in a word, it is not a crime known either to the common or statute law of this state. It is perfectly clear that neither a recognizance nor the scire facias upon it will be sufficient to authorize or support a judgment against the principal or surety, when the charge does not appear to be such as may be the subject of a criminal prosecution, and which requires bail. 'It is not necessary to recite the specific charge. To answer a charge of felony would be sufficiently explicit, because for every felony an indictment will lie.' West v. Com., 3 J. J. Marsh. 642, 643. But no indictment can be maintained on the charge of having in possession stolen goods. The recognizance, therefore, was unauthorized and invalid, and will not support a judgment."

Stancel v. State, 6 Tex. App. 460; Morris v. State, 4 Tex. App. 554. See, also, State v. Cotton, 6 Tex. 426; Cotton v. State, 7 Tex. 548; Tousey v. State, 8 Tex. 174; McDonough v. State, 19 Tex. 293; Foster v. State, 27 Tex. 236; State v. Gordon, 41 Tex. 510; Sively v. State, 44 Tex. 274; McLaren v. State, 3 Tex. App. 680, citing numerous authorities; O'Bannon v. State, 9 Tex. App. 465; Kramer v. State, 18 Tex. App. 13; Edwards v. State, 29 Tex. App. 452, 16 S. W. 98; Allison v. State, 33 Tex. Cr. R. 501, 26 S. W. 1080.

It is said by Mr. Chief Justice Roberts in State v. Gordon, supra, that:

"The Code of Criminal Procedure on this subject prescribes that the bond shall require the defendant to appear before the proper court 'to answer the accusation against him.' And in order that the accusation may be shown to be such as to authorize the bond, it is further prescribed 'that the offense of

which the defendant is accused be distinctly named in the bond, and that it appear therefrom that he is accused of some offense against the laws of the state.'"

In the early case of Dailey v. State, supra, it was ruled, as shown above, that a recognizance would not be sufficient to authorize or support a judgment against the principal or surety "when the charge does not appear to be such as may be the subject of a criminal prosecution, and which requires bail," and in the opinion it is also stated not to be necessary to recite the specific charge. "To answer a charge of felony would be sufficiently explicit, because for every felony an indictment would lie."

The distinction recognized and enforced by the courts of this state seems to be this:

"If an offense is one eo nomine, then it is only necessary, in the recognizance, to recite it by its name, as theft, etc. * * * When an offense is not one eo nomine, then the rule is well settled that the recognizance must state the essential elements of the offense, so that it will appear that a particular offense against the law is charged against the principal." Edwards v. State, supra; Allison v. State, supra; Morris v. State, supra.

The offense of receiving or concealing smuggled property, with knowledge that it had been unlawfully imported, as prescribed by section 3082 of the Revised Statutes, is not an offense eo nomine, and, according to the rulings of the Texas courts from the earliest cases to the present time, the offense must be described in the bail bond by giving substantially the statutory ingredients necessary to constitute it, in order that it may appear therefrom that the defendant is accused of some offense against the laws of the United States.

The cases cited pointedly support the view taken by the court touching the sufficiency of Sauer's bond. But the district attorney claims that U. S. v. Evans, 2 Flip. 605, 2 Fed. 147, and authorities there cited, announce a different rule, and that, upon the authority of those cases, the bond of Sauer is a valid obligation. By reference to the Evans Case it will be observed that Judge Hammond holds, as already shown, that the federal courts are bound, in the matter of taking bail in criminal cases, by the state laws, and it will be further seen that Evans' Case arose in the state of Tennessee, where it is held, by the supreme court of that state, that a bail bond is good "without even a specification of the offense charged against the defendant." State v. Adams, 3 Head, 261; State v. Rye, 9 Yerg. 386. U. S. v. Stien, 13 Blatchf. 127, Fed. Cas. No. 16,403, has no application to this case. The questions passed upon here were not decided in U. S. v. Reese, 4 Sawy. 629, Fed. Cas. No. 16,138, and hence the decision of Mr. Justice Field, whose opinions are entitled at all times to great consideration, cannot be considered as a guide for the court in this case. The other cases referred to by the district attorney were decided by state courts, and have no reference to the questions which have been considered by this court. The ruling upon Sauer's bond is based distinctly upon the statutes of Texas and the decisions of the highest courts of this state, and the rulings of other state courts as to the suffi-

ciency of bail bonds at common law would scarcely be pertinent to the inquiry.

Had a special exception been interposed by the defendants on the first ground discussed by the court, it would be overruled, for the reason that the commissioner had the power to take bail from Sauer conditioned for his appearance from day to day pending his examination. But the general demurrer not only raises that question, but also goes to the sufficiency of the bond upon the objection embraced in the special demurrer. In a word, all objections urged to the bond might have been properly presented by general demurrer; and, as the bond must be adjudged insufficient and a void obligation, the general demurrer, as well as the special demurrer, should be sustained, and the suit dismissed, and it is so ordered.