## UNITED STATES *v.* INSLEY *et al.*

### (*Circuit Court, D. Kansas.* February 29, 1892.)

**1. BAIL-BONDS—FORFEITURE—HOW COLLECTED.**
Proceedings in the federal courts in Kansas, to enforce a forfeited bail-bond given in the federal court against the sureties, must be by action after the end of the term, as provided by Gen. St. Kan. c. 82, § 153, and a judgment entered during the term, upon motion merely, after an entry of forfeiture and the issuance of a *scire facias,* is void.

**2. REVIVOR OF ACTIONS—MARSHAL'S DEED.**
When a judgment debtor dies after a levy on lands, the action must be revived before a valid deed can be made.

In Equity. Bill by the United States against Martha Insley and others for an accounting and to redeem lands. Decree quieting title in defendant Insley.

*J. W. Ady,* U. S. Atty., for plaintiff.

*J. D. McCleverly,* for defendants.

RINER, District Judge. This is a bill for an accounting, and to redeem lot 1, block 104, in the city of Ft. Scott. In July or August, 1869, Joseph H. Roe and C. A. Ruther were arrested upon a complaint charging them with violating the internal revenue laws of the United States. On the 3d of August, 1869, they were placed under bond for their appearance before the United States district court for the district of Kansas, with one M. McElroy and one Charles Bull as sureties. The bond or recognizance is in the following language:

"Know all men by these presents, that we, Joseph H. Roe, C. A. Ruther, and M. McElroy and Charles Bull, are jointly and severally held and firmly bound unto the United States of America in the penal sum of two thousand dollars, lawful money, for the payment of which well and truly to be made we bind ourselves, our heirs, executors, administrators, and assigns, firmly by these presents. Witness our hands and seals this third day of August, A. D. 1869. The conditions of the above obligation are that if the above bounden Joseph H. Roe and C. A. Ruther shall each of them be and appear, in his own proper person, before the United States district court, in and for the district of Kansas, at the next term thereof, and on the first day of said term, there to answer to a charge of willfully and knowingly violating the internal revenue laws of the United States, and shall not depart said court without leave, and shall abide the judgment of said court therein, then the above obligation to be void; otherwise to be and remain in full force and effect.                            C. A. RUTHER. [Seal.]
                                         "J. H. ROE. [Seal.]
                                   "M. McELROY. [Seal.]
                                   "CHAS. BULL. [Seal.]

"Subscribed in my presence and approved this Aug. 3, 1869, at Fort Scott, Kansas.                             W. A. SHANNON, U. S. Com'r."

On the 12th day of October, 1869, that being the second day of the term, a forfeiture of this recognizance in due form was taken, and an order for a writ of *scire facias* was issued, returnable October 30th. On the 6th of November, 1869, and at the same term, a motion was made

to make the forfeiture final, and for judgment, which was entered for the sum of $2,000, the penalty of the bond. No suit was brought upon this bail-bond nor other proceedings had except as above stated. Before the rendition of the judgment, McElroy, one of the sureties, had bought from one Bryant (the purchase being made August 5, 1869) lots 1 and 3, in block 104, in Ft. Scott, the purchase price being $6,000. At the time of this purchase, and to pay for this property, McElroy borrowed from one Palmer $3,500, and gave a mortgage dated August 7, 1869, upon these lots in Ft. Scott to secure the loan. April 27, 1871, a *pluries* execution was ordered out on the judgment of November 6, 1869, in favor of the United States, and on May 2, 1871, the execution was levied upon these lots 1 and 3, in block 104, in Ft. Scott. May 30, 1871, Palmer brought suit to foreclose his mortgage, but did not make the United States a party defendant. Service of summons was made on McElroy and wife, May 31, 1871. June 6, 1871, at a sale under said *pluries* execution, the United States bought said lot in satisfaction of its debt. October 4, 1871, Palmer obtained judgment of foreclosure in the sum of $3,764.16 and costs. October 16, 1871, the sale to the United States was confirmed and deed ordered made. The deed was subsequently made. October 25, 1871, Palmer ordered out execution against McElroy. December 4, 1871, the property was sold under the Palmer execution, and bid in for the debt by Palmer. The sale was confirmed, and on January 4, 1872, a sheriff's deed was made to Palmer. Here occurs an interregnum of over 12 years. This suit was brought November 28, 1884. The United States has never been in possession of said property. The attitude of the title on January 4, 1872, was—*First*, the property had been sold to the United States by sale confirmed October 16, 1871, on a second lien; *second*, the property had been sold to Palmer by sale confirmed December 26, 1871, on a first lien, the United States not being a party defendant. Between January 4, 1872, and the filing of this bill, on November 28, 1884, McElroy and wife remained in possession of said lot, with the consent of Palmer, under an agreement to purchase, until the death of Palmer, November 13, 1872, after which the agreement lapsed. Afterwards the Palmer heirs desired to sell, and they made another agreement with McElroy, who acted as agent for his wife, that they would sell the lots to Mrs. McElroy, defendant herein. Payments on the property began and slowly progressed through a series of years. The property had an earning capacity, and the rents and profits went to Moses McElroy. He died August 24, 1881, leaving the property partly unpaid for. In the agreed statement of facts it is admitted that the said agreement with the Palmer heirs vested the title and ownership of said lot "in the said defendant, Elizabeth McElroy, except as affected by the claim or interest of the complainant in this action, if it shall be determined any such claim or interest exists. The payments to Polly Palmer and her estate of the purchase price were made by Moses McElroy from his own funds while living, and from the same sources the taxes were paid until the bringing of this action. After the agreement of purchase had been made by Elizabeth McElroy,

she improved the lots by erecting certain buildings thereon at an expenditure of several thousand dollars, and has ever since paid all taxes and assessments levied upon said property, and has also collected the rents and enjoyed the use and benefit of the property; and the rents and profits so received and enjoyed by the said Elizabeth McElroy since her purchase of said lots exceed by a small amount the principal and interest that would now be due under the said mortgage of August 7, 1869, by way of redemption, and also exceed in addition thereto the total amount expended by the said Elizabeth McElroy since her said purchase for improvements made and taxes paid upon said property, with interest to date." The property was finally deeded by the Palmer heirs to Mrs. McElroy about five years after her husband's death, and after the filing of this bill. All of the defendants, except Elizabeth McElroy, have disclaimed any interest in the property in dispute. Upon these facts two questions are submitted to the court for determination: *First,* was the judgment of May 2, 1871, a valid judgment? *Second,* was it necessary to revive the original action before the marshal could make a valid deed; McElroy, the original defendant, having died between the date of the levy and sale and the date of the deed?

Section 1014 of the United States Revised Statutes provides that for any crime or offense against the United States the offender may, by any justice or judge, commissioner, etc., in any state where he may be found, and agreeably to the usual mode of process against offenders in such states, be arrested, imprisoned, or bailed, as the case may be, etc. While the instrument upon which the judgment in favor of the United States was rendered is called a "recognizance," yet technically it is not, but is a bail-bond or contract. A recognizance is an obligation of record. This security, call it what we may, was a recognizance or bail-bond taken agreeably to the mode of process against offenders in the state of Kansas at that time, and was a valid obligation under the laws of the state. The parties failed to appear in the proper court at the time specified in the bond, and the bond was properly forfeited. The security having been taken agreeably to the usual mode of process in the state of Kansas, the rights of the parties became fixed thereby, and the liability of these sureties upon this bond must be determined under the statutes of the state of Kansas in force at that time. Section 153, c. 82, Gen. St. Kan., which it is conceded was in force at the time this bond was taken, provides a remedy by action after the adjournment of the court against the bail and upon the recognizance, and that the action shall be governed by the rules of civil pleading so far as applicable. Section 149 of the same chapter provides that the bail, (that is the surety,) at any time before judgment against him, may surrender his principal either to the court or the sheriff, (or marshal in this case,) and, upon payment of the costs, may thereupon be discharged from further liability upon the recognizance. Thus it will be seen that, by the laws of Kansas in force at the time this bond was taken, the only remedy upon a forfeited recognizance was by action in the nature of a civil action, and that this action could be commenced only after the adjourn-

ment of the court at which the forfeiture was taken, for the surety had the entire term at which the forfeiture was taken to surrender his principal, pay the costs, and be discharged. This right the sureties were deprived of by the proceedings had in the district court upon the forfeiture of this recognizance. The proceedings there had were not authorized by the statutes of Kansas, nor by any law of the United States to which my attention has been called, and the judgment there entered, for the reasons above stated, had no validity.

McElroy, the original defendant, having died between the date of the levy and the date of the deed, it was necessary to revive the action before a valid deed could be executed. A decree will go for the defendant, quieting the title to the property in dispute in her, but not at the cost of the complainant.