## UNITED STATES v. INSLEY et al.

### (Circuit Court of Appeals, Eighth Circuit. February 6, 1893.)

### No. 125.

1. BAIL BONDS—ENFORCEMENT IN FEDERAL COURTS—STATE LAWS.

While, under Rev. St. § 1014, all proceedings for holding accused persons to bail to answer before a federal court, are assimilated to the proceedings in vogue for similar purposes in the state where the proceedings take place, still, in enforcing a forfeited bond taken in a criminal case, the United States is not restricted to the remedies provided by the laws of the state, but may proceed according to the common law. Hence a forfeited bond may be proceeded on by scire facias in Kansas, though by the Kansas law an independent action is necessary.

2. JUDICIAL SALE—DEED—ABATEMENT AND REVIVAL OF ACTIONS.

Where a sale is had and approved, and a deed ordered, and before its execution the judgment debtor dies, it is not necessary to revive proceedings in the name of the heirs or legal representatives before the deed is executed.

Appeal from the Circuit Court of the United States for the District of Kansas.

In Equity. Bill by the United States against the heirs at law and administratrix of Moses McElroy, and the heirs at law of Polly Palmer, to redeem certain land claimed under a mortgage. The circuit court dismissed the bill on the ground of laches, (25 Fed. Rep. 804,) but this decree was reversed on appeal to the supreme court. 9 Sup. Ct. Rep. 485. After another hearing in the circuit court the bill was again dismissed, and the United States again appeals. Reversed.

Statement by THAYER, District Judge:

This is a bill filed by the United States for an accounting, and to redeem a piece of property situated in the city of Ft. Scott, state of Kansas, which is now, and for many years last past has been, in the possession of Elizabeth McElroy. The facts on which the right of redemption is predicated are as follows: On the 3d day of August, 1869, Moses McElroy became surety in a bond before a United States commissioner in the penal sum of $2,000, for the appearance of Joseph H. Roe and C. A. Ruther before the United States district court for the district of Kansas at its next term, to be held in October, 1869, to answer to the charge of willfully violating the internal revenue laws of the United States. The bond in question appears to have been duly returned to, and to have been filed in, the United States district court for the district of Kansas; and on the 12th day of October, 1869, it was declared forfeited by said court, for the failure of the principals therein to appear. A scire facias was thereupon issued by said court, and was made returnable October 30, 1869. The writ of scire facias was duly served on McElroy on October 14, 1869, and on the 6th day of the following November final judgment appears to have been entered on the bond against McElroy, and against another surety, who was also duly served, in the sum of $2,000 and costs. Under the judgment last aforesaid a pluries execution was issued on the 27th day of April, 1871, and at a sale made under said execution the United States became the purchaser on June 6, 1871. The sale thus made was approved by the United States district court for the district of Kansas on the 16th day of October, 1871, and a deed was then ordered to be executed; but such deed was not in fact made until October 30, 1883, after the death of McElroy, the judgment debtor.

The lot in controversy appears to have been acquired by purchase by McElroy on the 5th day of August, 1869, and to have been mortgaged by

McElroy and wife on the day succeeding the purchase to one Polly Palmer, for the sum of $3,500. On the 30th of May, 1871, Polly Palmer brought an action against McElroy and wife to foreclose said mortgage, in the district court of Bourbon county, Kan., in which proceeding a judgment and decree of foreclosure was duly entered against McElroy and wife on the 4th day of October, 1871. On the 25th of October, 1871, an order of sale was issued in said cause; and, at a sale had thereunder on the 4th day of December following, Polly Palmer became the purchaser of the lot now in dispute, for the sum of $3,786.06, which sale was approved, and a deed was duly executed to Polly Palmer on the 4th of January, 1872. It is conceded that the title thus vested in Polly Palmer was subsequently transferred to Elizabeth McElroy, one of the defendants in this suit, and that she held such title, and was in possession of the premises in controversy, at the time the United States filed its bill to redeem, on the 24th of November, 1884. The United States was not made a party to the suit brought by Polly Palmer to fore-close the mortgage above referred to.

E. F. Ware, Sp. Atty., for the United States.

J. D. McCleverty, for appellees.

Before CALDWELL and SANBORN, Circuit Judges, and THAYER, District Judge.

THAYER, District Judge, (after stating the facts as above.) When this case was before the supreme court of the United States on appeal from a former decree of the circuit court, dismissing the bill, it was held that the appellees could neither invoke the plea of laches nor limitations as a defense to the right of the United States to redeem. U. S. v. Insley, 130 U. S. 263, 9 Sup. Ct. Rep. 485. We are relieved, therefore, of the necessity of considering such defenses, and will confine our attention to the question whether the second decree dismissing the bill can be sustained upon the ground on which the circuit court appears to have rested its decision. The circuit court held, in effect, that a bail bond or recognizance taken in a federal court or before a United States commissioner sitting in Kansas, for the appearance before a United States court of that district of a person charged with an offense against federal laws, can only be enforced in the mode prescribed by the laws of Kansas; that by the statutes of that state (paragraph 5218, Gen. St. 1889) such bonds and recognizances can only be enforced by a civil action brought in some court of competent jurisdiction after the lapse of the term at which the forfeiture is declared; and that the judgment in favor of the United States against McElroy was null and void, and not merely voidable, because it was rendered on scire facias, and before the adjournment of the term at which the forfeiture was declared. As the view thus entertained by the trial court places the federal courts in a condition of practical dependence upon local laws in a matter which is intimately connected with the efficient exercise of their criminal jurisdiction, we think it should not be adopted, unless it is clearly warranted by some federal statute.

It has frequently been held that United States commissioners derive their power to take bail for offenses against the laws of the United States from section 1014 of the Revised Statutes of the United States. That section provides that, "for any crime or offense against the United States, the offender may, by any justice or

judge of the United States, or by any commissioner of a circuit court to take bail, or by any chancellor, judge, * * * or other magistrate of any state where he may be found, and agreeably to the usual mode of process against offenders in such state, * * * be arrested and imprisoned, or bailed, as the case may be, for trial before such court of the United States as by law has cognizance of the offense." By reason of the provision contained in that section, that federal judges and commissioners shall proceed "agreeably to the usual mode of process against offenders in such state," it has also been held that the purpose was to assimilate all proceedings for holding accused persons to bail, to answer before a court of the United States, to the proceedings in vogue for similar purposes in the state where the proceeding should take place. It has accordingly been ruled that recourse must be had to the laws of the state where an examination is held to determine a commissioner's power to take bail for an appearance before himself, as well as to determine his right to adjourn a hearing, and the length of time such hearing may be adjourned. U. S. v. Rundlett, 2 Curt. 41, 48; U. S. v. Case, 8 Blatchf. 250; U. S. v. Martin, 17 Fed. Rep. 150; U. S. v. Horton, 2 Dill. 94. The decisions construing section 1014 have thus far only gone to the extent of holding that state laws control as to all questions of procedure before a United States commissioner up to the time the proceedings are certified to the court having jurisdiction to try the offense. But it has never been decided, so far as we are aware, that, in enforcing a forfeited recognizance or bond taken in a criminal case, the United States is restricted to those remedies which are provided by the laws of the state where the court happens to be held. As certain state magistrates were authorized by section 1014 to commit persons for trial who were accused of offenses against the laws of the United States, it was eminently proper to provide that, in the discharge of such duties, they might proceed in accordance with state laws, with which they were familiar. But no reason exists for limiting the federal courts, when proceeding to enforce a forfeited recognizance or bond which has been taken or duly lodged therein, to those remedies which are prescribed by state statutes. In the trial and disposition of criminal cases the federal courts proceed according to the course of the common law as modified by acts of congress. It has recently been held that the competency of witnesses in criminal trials in the courts of the United States is not governed by the statutes of the state where such trials are had, but is to be determined by the common law. Logan v. U. S., 144 U. S. 263, 303, 12 Sup. Ct. Rep. 617. See, also, U. S. v. Reid, 12 How. 361, 363. We think there is equal reason for holding that the courts of the United States may resort to such remedies for enforcing a bond or recognizance which has been duly returned by a federal commissioner or other committing magistrate, as are given by the common law. The federal courts, we believe, have heretofore acted upon the assumption, and with great unanimity, that, in the matter of enforcing a forfeited bond or recognizance, it was proper to issue a scire facias, and to enter a final judgment

against the principal and his sureties on the return of such process duly served, if no sufficient cause was shown for setting aside the forfeiture. That is one of the approved common-law methods of enforcing such obligations after a forfeiture is declared, and it has on some occasions been supposed that it was the only appropriate method, although it is now well settled that an original action may also be brought on bonds of that character. Com. v. Green, 12 Mass. 1; Com. v. McNeill, 19 Pick. 127. We are constrained to hold, therefore, that the judgment against McElroy in the sum of $2,000, which was rendered by the United States district court for the district of Kansas on the 6th day of November, 1869, was a valid judgment, and that it was not even voidable.

Another position was taken by the defendants in the circuit court, and seems to be relied upon in this court, that the marshal's deed to the lot in controversy, which was executed after the death of McElroy, is void, and conveys no title, for the reason that the action was not revived in the name of his heirs or legal representatives before the deed was executed. With reference to that contention, it is only necessary to say that as the sale of the lot was made and approved, and a deed was ordered to be executed, during the lifetime of McElroy, we do not perceive that the right of the United States to redeem is in any way impaired, even though it be true that the deed is in fact void. The deed is the mere evidence of transactions that had been fully consummated in the lifetime of the judgment debtor. But we are unwilling to concede that the deed is defective for the reasons above stated and urged. The law seems to be quite well settled that a deed made under such circumstances is valid, notwithstanding the failure to revive. Herm. Ex'ns, § 213, and citations. The decree of the circuit court is therefore reversed, with directions to enter a decree in favor of the United States, in such form as the parties have heretofore stipulated shall be entered in case the right of the United States to redeem was sustained.