## EWING v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit.   February 15, 1917.   On Petition for Rehearing, April 14, 1917.)

No. 2887.

1. BAIL ⬤⟿55—"RECOGNIZANCE"—"BAIL BOND."
    While the purpose of a recognizance and a bail bond is the same, a "recognizance" is an obligation of record entered into before some court of record, and need not be signed by the principal or the surety, while a "bail bond," is signed by the parties; the consideration being the release of one accused from custody.
    [Ed. Note.—For other cases, see Bail, Cent. Dig. §§ 213–224, 228–238, 246–253.
    For other definitions, see Words and Phrases, First and Second Series, Bail Bond; Recognizance.]

2. BAIL ⬤⟿47—ADMISSION TO BAIL—DUTY OF JUDGE.
    Before an offender can be admitted to bail, the judge must determine the offense is bailable, fix the penalty of the bond, and approve the surety, or see that such approval is provided for; and it is sufficient that the judge, when informed by the deputy clerk that accused desired admission to bail and offered as surety an attorney well known to the judge, fix the amount and direct approval of the bond.
    [Ed. Note.—For other cases, see Bail, Cent. Dig. §§ 165–183, 257.]

3. BAIL ⬤⟿47—BAIL BOND—JURISDICTIONAL FACTS.
    Before there can be recovery on a bail bond, it must appear that the offender was bailed by one qualified to admit to bail.
    [Ed. Note.—For other cases, see Bail, Cent. Dig. §§ 165–183, 257.]

4. BAIL ⬤⟿47—ADMISSION TO BAIL—AUTHORITY OF COURT.
    Rev. St. §§ 1014, 1015 (Comp. St. Ann. 1916, §§ 1674, 1679), declaring that an offender may be bailed by any justice or judge of the United States, or by any commissioner of a Circuit Court to take bail, etc., agreeably to the usual mode of process against offenders in such state, etc., are as to District Courts declarative of the inherent common-law power of such courts to admit offenders to bail.
    [Ed. Note.—For other cases, see Bail, Cent. Dig. §§ 165–183, 257.]

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
240 F.—16

5. BAIL ☞60—BAIL BOND—SUFFICIENCY.

Shannon's Code Tenn. § 7116, declares that a bail bond may be taken out of court, in which case it must be signed by the defendant and at least two sureties, approved by the magistrate or officer; while section 7118 provides that the undertaking may be given in open court and entered on the minutes. Section 7119 provides that every bond or recognizance deemed good or valid as a common-law bond shall be a good statutory bond, and no defense to any action or scire facias prosecuted to enforce such bond shall be available, unless it would be a legal and valid defense to a suit at common law upon the same; while sections 7125, 7126, respectively declare that a bail bond is not discharged for want of qualifications required by law, and that the undertaking shall be returned to the court having cognizance of the offense, with the other papers, if any. A bail bond given in the Federal District Court for Tennessee recited that the principal and surety acknowledged themselves indebted to the United States in the sum of $2,000, to be levied of their proper goods and chattels, lands and tenements, but to be void if the principal should make his personal appearance before the District Court, etc., and was duly signed by the principal and surety. The bond further recited that it was signed, sealed, acknowledged before, and approved by the deputy clerk. *Held*, that the bail bond, the judge of the District Court having fixed the amount and directed approval, was sufficient under the Tennessee statutes, containing all the elements of a common-law bond, though not taken in open court, and though signed by only one surety.

[Ed. Note.—For other cases, see Bail, Cent. Dig. §§ 225–227.]

6. BAIL ☞82—RECOGNIZANCE—DEBT.

A recognizance or bail bond may be enforced by scire facias or civil action; debt lying on the recognizance.

[Ed. Note.—For other cases, see Bail, Cent. Dig. § 372.]

7. BAIL ☞89(3)—BAIL BOND—SCIRE FACIAS.

A writ of scire facias is considered both as process and a declaration, and informalities which may be taken advantage of by demurrer can be cured by amendment; an amendment being permissible to show a custom of taking the bond out of court.

[Ed. Note.—For other cases, see Bail, Cent. Dig. § 397.]

8. BAIL ☞82—BAIL BONDS—REMEDIES.

As the sovereign may maintain any action adapted to his case as his subject under like circumstances might maintain, the United States may adopt the remedy of scire facias to recover on a bail bond, and have entered judgment after return of process if no sufficient cause is shown for setting aside the conditional judgment.

[Ed. Note.—For other cases, see Bail, Cent. Dig. § 372.]

9. BAIL ☞89(3)—BAIL BOND—SCIRE FACIAS—AMENDMENT.

In view of Rev. St. § 716, authorizing the issuance of scire facias out of the United States court, and Comp. St. 1901, § 954, providing for the amendment of such writs for any defect or want of form, a scire facias issued out of the Federal District Court for Tennessee to recover on a bail bond may be amended to show the missing jurisdictional fact that the court admitted the offender to bail.

[Ed. Note.—For other cases, see Bail, Cent. Dig. § 397.]

10. BAIL ☞89(3)—BAIL BONDS—SCIRE FACIAS—AMENDMENT.

Comp. St. 1901, § 914, declares that the federal practice in actions at law shall conform as near as may be to the practice pleadings and forms in like causes in the state court. Act Tenn. 1897, c. 47, § 1 (Shannon's Code Supp. p. 853), sets forth the form of scire facias issued on a conditional judgment rendered on a recognizance or bail bond, while section 1a of the act provides that the statutory form may be so changed as to give the parties notice of the nature of the obligation on which the judgment is

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

rendered, and it shall not be necessary to set out in full all the jurisdictional facts in any scire facias, and when any writ fails to contain the necessary allegations it may be amended. *Held* that, in view of Shannon's Code Tenn. § 7119, declaring that a bail bond valid as a common-law bond shall be valid under the statutes, a writ of scire facias issued out of the federal District Court for Tennessee upon a conditional judgment on a bail bond may be amended so as to supply the jurisdictional averment that the offender was admitted to. bail by the judge.

[Ed. Note.—For other cases, see Bail, Cent. Dig. § 397.]

11. BAIL ☜90—BAIL BONDS—PROCEEDINGS.

In scire facias on a conditional judgment on a bail bond, testimony that the offender was admitted to bail by the judge is not objectionable, as contradictory of the record, where the record did not show by whom the offender was admitted to bail.

[Ed. Note.—For other cases, see Bail, Cent. Dig. §§ 401–406.]

12. BAIL ☜93—SCIRE FACIAS—AVERMENTS—JUDGMENT.

Though scire facias on a conditional judgment on a bail bond did not allege that accused was admitted to bail by the judge, yet where evidence of that fact, which rested in parol, was received without objection, the judgment cannot be attacked on the ground that it was not supported by the writ.

[Ed. Note.—For other cases, see Bail, Cent. Dig. §§ 409, 410, 413–417.]

13. BAIL ☜62—BAIL BOND—IMPLIED OBLIGATIONS.

The surety on a bail bond is a quasi jailer, and there is no implied obligation on the part of the principal to reimburse the surety for the amount paid on the principal's default.

14. BAIL ☜62—BAIL BOND—ESTOPPEL.

Where an attorney, an officer of the court, secured the release of an offender on a bond accepted and approved by the deputy clerk, such attorney, the United States having changed its position to its detriment, is thereafter estopped to question the bond on the ground that the clerk was without authority.

15. BAIL ☜74(1)—BAIL BOND—ADMISSION TO BAIL.

While one accused of a felony cannot waive, either himself or by his counsel, the right to be personally present at all steps in the trial, the giving of a bail bond for appearance at trial is not a step in the trial, and a bail bond accepted by the judge in the absence of accused cannot be attacked on the ground that it was invalid because of accused's absence.

[Ed. Note.—For other cases, see Bail, Cent. Dig. §§ 289–308.]

16. BAIL ☜76—BAIL BOND—LIABILITY OF SURETY.

A surety on a bail bond can be held liable only within the absolute terms of his undertaking, which cannot be enlarged.

[Ed. Note.—For other cases, see Bail, Cent. Dig. §§ 322–327.]

17. BAIL ☜75—BAIL BONDS—LIABILITY OF SURETY.

In a prosecution in the federal District Court for Tennessee accused was admitted to bail on a bond, the condition of which was that he should appear before the court at a fixed term, then and there to answer, and to continue in attendance from day to day and from term to term until discharged, and to abide the decision of the court in the premises. When accused was convicted, he was allowed liberty pending a motion for new trial on the theory that the bail bond, which was signed by his counsel, was a continuing bond; counsel so stating to the court. Acts Tenn. 1903, c. 99 (Shannon's Code Supp. p. 852), declares that a bail bond shall be valid and binding upon defendant and his sureties for defendant's personal presence before the court from term to term until the case is finally terminated or stricken from the docket, and defendant discharged by the court, and the defendant shall not be required to renew the bond unless

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ordered to by the court because of its insufficiency in amount, etc., provided the sureties may surrender the prisoner and be released. *Held* that, in view of the statute, the bail bond was a continuing obligation until sentence, and where accused failed to appear for sentence the condition of the bond was forfeited, and his surety became liable.

[Ed. Note.—For other cases, see Bail, Cent. Dig. §§ 309–312, 315–321.]

In Error to the District Court of the United States for the Western District of Tennessee; John E. McCall, Judge.

Scire facias by the United States against Caruthers Ewing and another. There was a judgment for plaintiff, and the named defendant brings error. Affirmed.

A scire facias, issued to the marshal of the Western district of Tennessee, was executed by him on Caruthers Ewing, plaintiff in error; the other defendant thereto, C. A. Bonds, was not found within the district. So much of the writ as is important reads:

"Whereas, on the fifth day of December, A. D. 1911, before E. J. Heidel, deputy clerk of the United States District Court for said district, C. A. Bonds, as principal, and Caruthers Ewing, as surety, by their bond of that date, acknowledge themselves to owe and be indebted unto the United States in the sum of two thousand ($2,000) dollars, to be levied of their proper goods and chattels, lands and tenements, to the · use of the United States: But to be void if said principal should, well and truly, make his personal appearance before the District Court of the United States for the Western Division of the Western District of Tennessee, at the courtroom in the city of Memphis, on the fourth Monday in May next, A. D. 1912, that being the first day of the regular May term thereof; then and there to answer the United States, on a charge against him for violation of the postal laws of the United States by unlawfully using the mails of the United States for fraudulent purposes, and continue in attendance at said term of said court from day to day, and term to term, until discharged, and abide the decision of said court in the premises, which said bond has been duly filed in said court. And it appearing, that on the thirtieth day of November, A. D. 1912, one of the days of the November term of the court aforesaid, the said principal being solemnly called to come into said court, and answer said charge, came not, but therein made default. And it further appearing that on said last named day the above named sureties of said defendant on his said bond, being so called to produce said principal according to the conditions thereof did not, but therein wholly failed. It was thereupon, then and there, considered by the said court that judgment nisi be entered against said principal and sureties for the aforesaid sum of two thousand ($2,000) dollars, the penalty in said bond specified, and that scire facias issue against them returnable to the next term of said court, to show cause, if any they have or know, why said judgment shall not be made final, and the United States have execution thereof. All of which appears to us of record.

"These are therefore to command you that you make known to the said C. A. Bonds, as such principal, and to the said Caruthers Ewing, as such surety, the contents of this writ, and summon them to appear before the judge of the United States District Court for the Western Division of the Western District of Tennessee, at the federal courtroom, in the city of Memphis, on the fourth Monday in May, A. D. 1913, then and there to show cause, if any they have or know, why the United States should not have judgment final and execution against them for the amount of the recovery so had as aforesaid. Herein fail not, and have you then and there this writ."

The bond reads:

"United States of America, Western District of Tennessee, Western Division.

"Know all men by these presents, that we, C. A. Bonds, as principal, and Caruthers Ewing, as surety, hereby acknowledge ourselves to owe and be indebted to the United States in the sum of two thousand ($2,000) dollars, to be levied of our proper goods and chattels, lands and tenements, to the use of the United States, but to be void if the said principal do well and truly make

his personal appearance before the District Court of the United States for the Western Division of the Western District of Tennessee, at the federal courtroom, in the city of Memphis, on the fourth Monday in May next, A. D. 1912, that being the first day of the regular May term thereof, then and there to answer the United States on a charge against him for violation of the postal laws of the United States, and continue in attendance at said term of said court from day to day and term to term until discharged, and abide the decision of the said court in the premises.

"Witness our hands and seals this fifth day of December, A. D. 1911.

"C. A. Bonds.

"Caruthers Ewing.

"Signed, sealed and acknowledged before me, at Memphis, Tennessee, and approved by me, this fifth day of December, A. D. 1911.

. "E. J. Heidel, Deputy Clerk."

The bond was filed in the clerk's office.

To the writ the surety on the bond interposed the pleas that he did not owe the United States; that the bond was executed by him as surety, and is void for the reason that the deputy clerk had no authority to take it, the same not having been executed under the orders of, and Bonds not having been admitted to bail by, any court or other official of competent jurisdiction; that the terms of the bond have been fulfilled in every particular by Bonds, the principal in it; and that, if Bonds did depart from court, as alleged in the writ, it was after his conviction, and after all the undertakings under the bond had been fully performed by the principal and the surety thereon.

At the hearing a stipulation showed that Bonds was indicted, with others, in the Western district of Tennessee for a felony—a violation of the postal laws—and the following facts appeared from the testimony of the deputy clerk, no objection being made: Before the warrant in the hands of the marshal for Bonds' arrest had been served, he surrendered himself. Caruthers Ewing, his attorney, a lawyer of long experience and high standing, came with him to the clerk's office of the District Court at Memphis for the purpose of becoming surety on his bail bond. Bonds was then in the actual custody of either the marshal or a deputy marshal. The clerk being absent, his office was in charge of E. J. Heidel, his deputy. The clerk's office and the courtroom at that time were on the third floor of the government building at Memphis, and the judge's chambers were on the second floor. The deputy, before entering on the preparation of the bond, filling in the blanks, etc., left the accused and his attorney in the clerk's office, went to the judge's chambers, and "stated the facts with reference to the matter to the judge, and had him to fix the penalty of the bond." In answer to the question whether or not the judge had "anything to do with any matter besides fixing the amount on the application for the bond," he said: "I think, as is his usual custom, he asked me what the charge was, and I reiterated the charge in the indictment, and then he fixed the amount of the bond." He further testified that he returned to the clerk's office and prepared the bond, which was signed by the accused as principal and Mr. Ewing as surety. Thereupon the accused was released from the custody of the marshal.

At the time the bond was taken, it does not appear that any formal adjournment of court on that day had taken place. The minutes show the court was open all day, and it was shown by both the judge and the deputy clerk that the practice of taking bail bonds in the way this was taken was long established. See, also, United States v. Evans (C. C.) 2 Fed. 147. At the trial, Mr. Ewing conducted Bonds' defense. It appears from the testimony of the district attorney that, when the jury brought in a verdict of guilty, it was announced that a written motion for a new trial would be filed, and one of the counsel for the defendants, in behalf of all, requested that the defendants be allowed to stand on their same bonds pending the motion for a new trial. It is shown by the statement of Judge McCall that Mr. Ewing made the request in behalf of all the defendants, and that, after inquiry was, by the judge, made of the district attorney if the bonds were sufficient in amount, to which he responded affirmatively, the court granted the request.

Upon the record so made up, judgment was rendered against the surety for the penalty of the bond. To this he assigns error, in that the court did

not hold the bail bond to be void because Bonds was not admitted to bail and the bail bond taken by an officer or court competent and authorized to do so, and because he was admitted to bail by a deputy clerk not authorized to admit his principal to bail; in that the court did not hold that Bonds was admitted to bail by the deputy clerk, and was therefore void; and in that the court did not hold that all the terms and provisions of the bond were performed by Bonds according to its terms.

G. J. McSpadden, of Memphis, Tenn., for plaintiff in error.
Wm. D. Kyser, Asst. U. S. Atty., of Memphis, Tenn.

Before WARRINGTON and DENISON, Circuit Judges, and HOLLISTER, District Judge.

HOLLISTER, District Judge (after stating the facts as above). That a clerk or his deputy has no power to bail offenders, and that the power is judicial in nature and cannot be delegated, are propositions not disputed in this case, and need no discussion, for the offender was not bailed by the deputy clerk, but was bailed by the judge himself. If this conclusion is not correct, yet the surety is not in a position to deny the propriety of the proceedings through which the offender was released from custody.

[1, 2] The claim that the bond and scire facias show the bail to have been taken by the deputy clerk cannot be sustained. All the deputy clerk did was to certify the bond was signed, sealed, and acknowledged before him, and approved by him. All of these acts have been held to be done in the discharge of ministerial functions only if the bail has been fixed by the judge. Gregory v. State, 94 Ind. 384, 388, 48 Am. Rep. 162. The Supreme Court of Tennessee have decided that the taking of a bail bond is a clerical act. State v. Cooper, 120 Tenn. 549, 554, 113 S. W. 1048, 15 Ann. Cas. 1116. It was expressly decided by Judge Hammond in the Western District of Tennessee in United States v. Evans (C. C.) 2 Fed. 147, 152, in which the same memorandum at the foot of the bond is found as was adopted by the deputy clerk in this case, that a bond containing such a memorandum does not show the clerk acted in a judicial capacity. It was the opinion of Judge Hammond, and we agree, that such acts as these, when done by the clerk, are ministerial, and the bond itself does not show it was ordered or taken by any officer whatever.

This is a bail bond, not a recognizance. In some of the cases the terms are used interchangeably. Blackstone defines a recognizance to be "an obligation of record, which a man enters into before some court of record or magistrate duly authorized, with condition to do some particular act, as to appear at the assizes, to keep the peace, to pay a debt, or the like" (2 Black. Comm. 341); and it is evidenced by a memorandum on the minutes, to which the signature of the principal and surety are not necessary.[1] The purpose of a bail bond is the same as a recognizance. They are both contracts between the

[1] People v. Kane, 4 Denio (N. Y.) *530, *536; United States v. Pickett, 1 Bond, 123, 125, Fed. Cas. No. 16,043; Campbell v. State, 18 Ind. 375, 376, 81 Am. Dec. 363; State v. Elder, 35 Ind. 368; Commonwealth v. Emery, 2 Bin. (Pa.) *431, *434; Tillson v. Kansas, 29 Kan. *452, *456, *457.

United States, on the one hand, and the offender and his surety, on the other.[2] Whatever requirements may attend a technical recognizance, there is no case, so far as we know, in which it is held that the offender and his surety, or either of them, is required to appear in open court, or personally, go before the judge, in court or elsewhere, before, or at the time of, executing a bail bond. The consideration running to the surety is the release of the offender from custody. Jones v. Gordon, 82 Ga. 570, 572, 9 S. E. 782; Hunt v. United States, 61 Fed. 795, 801, 10 C. C. A. 74. In the case last cited, on rehearing (63 Fed. 568, 569, 11 C. C. A. 340, 341), the Circuit Court of Appeals for the Eighth Circuit say:

"No law of which we are aware requires the sureties to appear personally before the judge, unless they are to become bound by a technical recognizance, such as is entered into in open court, and spread upon the journal of its proceedings. When a bail bond is taken, as in the present case, and the obligation assumed by the sureties is evidenced by their signature to the bond, and not by the court record, it is not essential that they should appear personally before the court or judge."

Nevertheless, the judge has duties to perform before the offender can be said to be properly bailed. It was said by Chief Judge Cranch, in United States v. Lawrence, 4 Cranch, C. C. 518, 519, Fed. Cas. No. 15,577, that the discretion of the magistrate in taking ,bail is "to be guided by the compound consideration of the ability of the prisoner to give bail, and the atrocity of the offense." These duties are elaborated to unnecessary detail in some of the cases, but we agree with the judges of the Circuit Court of Appeals in Hunt's Case that the judge is only required to determine whether the offense charged is bailable, fix the penalty of the bond, and approve the surety, or see that such approval is provided for.

To decide rightly he must have the necessary facts before him. Just what the deputy clerk said to Judge McCall does not clearly appear. What information he himself had, other than that which the clerk told him, is not disclosed; but we may justly assume he knew the accused was indicted with others for violation of the postal laws, and that the accused and Mr. Ewing, his attorney, were waiting in the clerk's office to execute a bail bond with the attorney as surety. The judge fixed the penalty of the bond. He knew the case was one in which bail might be taken, and the proposed surety was well known to him.

So far as appears, the judge did not, in so many words, direct the clerk to prepare the bond and accept it when executed. That was a matter of course. What was done was the same as if the judge, advised as to the nature of the case and financial responsibility of the surety, had directed the clerk to accept the bond from the principal and his surety at the penalty fixed, duly conditioned for the defendant's

2 Reese v. United States, 9 Wall. 13, 21, 19 L. Ed. 541; United States v. Zarafonitis (C. C. A. 8) 150 Fed. 97, 99, 80 C. C. A. 51, 10 Ann. Cas. 290; United States v. Van Fossen, Fed. Cas. No. 16,607; United States v. Insley (C. C.) 49 Fed. 776, 778; Dennard v. State, 2 Ga. 137; Bothomly v. Fairfax, 1 P. Wms. 334; State v. Mayson, 2 Nott & McC. (S. C.) *425.

appearance,. and was in substance an approval by the judge himself of that bond when accepted. Hunt v. United States, 63 Fed. 568, 570, 11 C. C. A. 340.

The only substantial difference between that case and this is that there the judge wrote a note to the clerk directing him to approve the "recognizance" (it was a bail bond) for the offender in a sum named, "with two sureties in addition to the principal, the same to be sufficient and approved by you." Hunt v. United States, 61 Fed. 799, 10 C. C. A. 74. The note did not go on the minutes, but was on file with the bond in the clerk's office.

[3] But it is urged that the scire facias, which speaks from the record, must show the manner of taking the bond, or its return into court,. and, failing to do so, is fatally defective. If this writ is, under technicalities, open to criticism at all, it is that it fails to show that the offender was bailed by one qualified to admit to bail. As that fact was not a matter of record, the scire facias was necessarily silent on the subject. It may be admitted for the purposes of this case that the existence of that fact is jurisdictional in a proceeding to forfeit either a bail bond or a recognizance.

[4] We pause to consider the power conferred by Congress upon District Judges to bail offenders against the criminal laws of the United States. It is found in sections 1674 and 1679, 3 U. S. Comp. Stat. Ann. 1916, pp. 3447, 3485, Rev. Stat. §§ 1014 and 1015. (The power is inherent at the common law.)[3] The offender may be bailed by "any justice or judge of the United States, or by any commissioner of a Circuit Court to take bail, or by any chancellor, judge of a Supreme or superior court, chief or first judge of common pleas, mayor of a city, justice of the peace, or other magistrate, of any state where he may be found, and agreeably to the usual mode of process against offenders in such state"; and in all cases where the offense is not punishable by death, bail may be taken by any of these persons.

It has been assumed that the phrase "agreeably to the usual mode of process against offenders in such state," found in Revised Statutes, § 1014, regulates and controls the steps to be taken upon bailing one who has been indicted by a grand jury of the United States, as well as those preliminary examinations to which parts of the section are particularly appropriate. It does not seem necessary to decide, in this case, how far the statutes and practice of Tennessee may determine the validity of this bond, since we think its validity sufficiently rests upon other grounds; but, as it has been attacked upon the theory that it did not comply with the Tennessee "mode of process," and is for that reason invalid, it is appropriate that this attack be met and considered.

[5] We look, therefore, to the statutes of Tennessee, and, referring to Shannon's Annotated Code, find that an undertaking may be given in open court and entered on the minutes (section 7118), and that it may be taken out of court, in which case it must be signed by the de-

___

[3] Fanshaw v. Morrison, 2 Ld. Raym. 1138,.1141; 8 Viner's Abridg. (2d Ed.) "Recog." 4, p. 163; United States v. Evans (C. C.) 2 Fed. 147, 152; "for if a man will voluntarily enter into it, a judge has power to take it." Holt, C. J., Anonymous, Case 76, 11 Mod. *53.

fendant and at least two sureties and approved by the magistrate or officer (section 7116); but it is not discharged for want of the qualifications required by law, or by reason of there not being the requisite number of bail (section 7125), and the undertaking shall be returned to the court having cognizance of the offense with the other papers, if any (section 7126). It is provided by section 7119, which is descriptive of the bond as well as of the remedy, that:

"Every bond or recognizance deemed good and valid as a common law bond, shall be a good statutory bond, and no defense to any action or scire facias, prosecuted to enforce such bond or recognizance, shall be available, unless it would be a legal and valid defense to a suit at common law upon the same."

The Supreme Court of Tennessee felt constrained, notwithstanding this statute, to hold, under their former ruling in State v. Arledge, 2 Sneed (Tenn.) 229, that, as the writ made no reference to the manner of taking the bond or its return, it was bad (State v. Patterson, 7 Baxt. [66 Tenn.] 246); and in State v. Johnson, 6 Baxt. (65 Tenn.) 198, no bond or recognizance being set out, and nothing from which the liability of the defendant arose as being of record appeared on the face of the writ, it was held to be insufficient by reason of former decisions, notwithstanding section 7119. But the court were of opinion that a declaration on a bond at common law for the appearance of a party in court should show that the party had made the bond and the terms of his obligation, so that on its face the court could say that it had been broken, and, without that, it was demurrable.

This bond contains every element of a common-law bond. It need not be taken in open court, and in other respects it satisfies the Tennessee statutes.

[6, 7] We next consider the remedy on a forfeited bail bond, to find out whether or not the jurisdictional fact, not being in the record, and hence absent from the scire facias, can be supplied. Debt lies on a recognizance. Grimston v. Wade, 3 Keb. 221 (Chief Justice Hale). It may be enforced either by scire facias, or by ordinary civil action.[4] The writ is considered both as process and declaration, informalities to be taken advantage of by demurrer, when the writ may be amended. 8 Bac. Abridg. Bouv. E. 624. It is in the nature of a declaration (State v. Patterson, 7 Baxt. [66 Tenn.] 246), and is so in the nature of an original action that defendant may plead to it, and it is in that respect considered as an action (8 Bac. Abridg. Bouv. A. 598). It is in the nature of an action. State v. Kinne, 39 N. H. 129, and cases cited. Scire facias is a civil action. Shaw, Chief Justice, Commonwealth v. McNeill, 19 Pick. (Mass.) 127, 138. See Hunt v. United States, 166 U. S. 424, 425, 426, 17 Sup. Ct. 609, 41 L. Ed. 1063.

Whether or not at common law amendment might ordinarily be permitted to show any other facts than those appearing of record, it would seem that it could be done for the purpose of showing a custom of taking a recognizance out of court, which must be alleged.

4 State v. Gorley, 2 Iowa, 52, 56; State v. Glass, 9 Iowa, 325; State v. Welch. 59 N. H. 134; United States v. Insley, 54 Fed. 221, 224, 4 C. C. A. 296 (C. C. A. 8).

Caul v. Llemark, 3 Keb. 249, per curiam (Chief Justice Hale, Twisden, and Rainsford, Justices of the King's Bench).

It was shown by Judge McCall that the method of procedure in taking this bond in this form has been the practice in his court during the many years of his service, and Judge Hammond's decision in Evans' Case, heretofore cited, was in 1880. It may be added that this form of bond and certificate are identical with the bail bond and the clerk's certificate thereto taken in the District Court for the Southern District of Ohio from time immemorial, with nothing on the minutes to show that the judge had acted in the matter. However, while the letting to bail by the judge sufficiently appears in this case, and it might be possible to make the necessary showing in any case, yet we all think a practice should not be approved which allows that important fact to rest on parol evidence. It is a simple matter, and will save all doubt, for the judge to indorse upon the indictment or bench warrant:

"Let the respondent be held to bail in the sum of $——, with surety or sureties to be approved by the court, judge, or clerk."

[8, 9] That the United States might have brought an action at law on this bail bond cannot be doubted, for the king may maintain any action adapted to his case which a subject under like circumstances might maintain.[5] The courts of the United States have with "great unanimity" adopted the remedy of scire facias, and have entered judgment after return of process "if no sufficient cause was shown for setting aside the forfeiture." Judge Thayer in United States v. Insley, 54 Fed. 221, 223, 224, 4 C. C. A. 296 (C. C. A. 8). From such courts scire facias may issue. Section 716, Rev. Stat. By section 954, 1 U. S. Comp. Stat. 1901, p. 696, the writ may be amended for any defect or want of form, and the court shall proceed to give judgment according as the right of the cause and matter in law shall appear to it, etc., and shall amend every defect and want of form other than those to which the party has expressly demurred, and at any time may permit either of the parties to amend any defect in the process or pleadings on discretional terms.

We hold, therefore, that under the federal practice and without regard to the statutes of Tennessee, to be considered, this writ could have been amended in the District Court, so as to supply the missing jurisdictional fact, by showing the circumstances under which the bond was taken. It will be seen by reference to Insley v. United States, 150 U. S. 512, 14 Sup. Ct. 158, 37 L. Ed. 1163, that the District Court having jurisdiction of forfeitures and penalties and to issue scire facias, and that writ having issued on a forfeited bail bond, the cause could proceed, although the state statute involved provided for the enforcement of such bonds only by civil action.

[10] But scire facias is a remedy prescribed by the statutes of Tennessee, and, conforming the federal practice, pleadings, forms, and

[5] Commonwealth v. Green, 12 Mass. 1, 2; People v. Van Eps, 4 Wend. (N. Y.) 387; Commonwealth v. McNeill, 19 Pick. (Mass.) 127, 138; State v. Kinne, 39 N. H. 129, 135.

mode of proceeding in civil causes "as near as may be" to the practice, pleadings, forms, and mode of proceeding existing in like causes in the state court (section 914, 1 U. S. Comp. Stat. 684), we find ample provision for amending the writ to show jurisdictional facts. By section 1 of the Tennessee Acts of 1897, c. 47, Shannon's Supp. (1897–1903) p. 853, the form of scire facias issued on a conditional judgment rendered on a recognizance or bail bond is set forth. The writ in this case contains not only the requirements of the statutory form, but incorporates unnecessary facts, including the preamble that the principal and surety acknowledged themselves to be bound before the deputy clerk, etc. Unnecessary allegations have been held to be surplusage. State v. Rye, 9 Yerg. (17 Tenn.) 386. It is provided by section 1a of that act that the statutory form may be so changed "as to give the parties notice of the nature of the obligation on which it" (conditional judgment) "is rendered, and it shall not be necessary to set out in full all the jurisdictional facts in any scire facias as heretofore required, and when any scire facias fails to contain the necessary allegations or facts as required under this act, it may be amended in court according to the practice in reference to amendments of other writs and pleadings."

By these acts, and section 7119, heretofore referred to, held by the Supreme Court of Tennessee to abolish the distinction between statutory and common-law bonds and recognizances and to provide that the latter should be equivalent to the former (State v. Quinby, 5 Sneed, 419, and Brewer v. State, 74 Tenn. 198, 204), the Legislature of Tennessee have sought, and we think successfully, to do away with technical defenses through which sureties on recognizances and on bail bonds have sometimes been able to escape the just penalty for the breach of obligations to which they had voluntarily become parties, and have intended that a scire facias may be treated as a declaration at common law and amended according to the justice of the case to show such pertinent facts as the proof establishes.

[11, 12] The circumstances under which this offender was admitted to bail could only be disclosed by parol testimony. Counsel must have appreciated the admissibility of such testimony, for they have made no objection to the statement of the judge and the testimony of the district attorney or of the deputy clerk. That testimony cannot be said to contradict the record, for it is already shown the record does not disclose who the officer was. And further, a stipulation of counsel filed in the cause, after reciting in terms the bond, judgment nisi and the scire facias, concludes:

"Nothing in this agreement is intended to in any way conflict with or contradict the testimony of any witness, as shown in this bill of exceptions. * * *"

Counsel now say that proof without allegations will not support a judgment. If he objected seasonably, the court then, no doubt, would have permitted an amendment to the writ; but, in any event, it is now too late. Roberts v. Graham, 6 Wall. 578, 581, 18 L. Ed. 791; Railroad v. O'Reilly, 158 U. S. 334, 335, 15 Sup. Ct. 830, 39 L. Ed. 1006.

We have no doubt of the legality of the proceedings through which

the prisoner was bailed and the bond enforced, and that such irregularity as may appear from the fact that the writ was not amended to conform to the evidence is now immaterial.

[13, 14] But there is another reason why the surety must do what he agreed to do. He of his own motion and for purposes of his own presented himself in the clerk's office to obtain a release from custody of the offender, his client. He was an officer of the court. He knew the law. He made no objection to the way in which his client was bailed. His relation to the bond was nominally that of surety; yet it was different from that assumed by a surety in ordinary cases of suretyship. There is here no implied obligation of the principal to repay the amount the surety pays on default, and no right of subrogation arises in his favor. United States v. Ryder, 110 U. S. 729, 736, 4 Sup. Ct. 196, 28 L. Ed. 308. The money the surety pays on default is not to the principal's use, or on his account; it is on the surety's account, and for neglect; the sureties are quasi jailers. Littleton v. State, 46 Ark. 413, 418, 419.

The custody of the offender was surrendered by the marshal to the surety upon his agreement to produce the offender according to the terms of the bond. The dominion the surety acquired was in continuance of the original imprisonment.[6] The surety's obligation is rather primary than secondary in nature. If it is true that in legal effect the deputy clerk bailed the offender, how can the surety be permitted to escape the just penalty of his failure to produce the offender as he agreed to do by saying the deputy clerk had no power to do the act through which, at his request, he assumed the custody of his client? By his act, the position of the United States was changed, and to its detriment. Under such circumstances, he is estopped to deny the deputy clerk's power.[7]

[15] But it is urged (quoting from counsel's brief):

"As a matter of law it was impossible for the district judge to have taken the bond, because the accused was never in his presence and the law requires that the accused must be present at every step of his trial, and he cannot waive that right and the record must show that fact affirmatively."

There is nothing in section 9 of the Declaration of Rights in the Constitution of Tennessee conferring the right on one charged with crime to be in open court or in the presence of the judge when giving a bail bond. It is an ancient rule that it is not in the power of the accused, charged with the commission of a felony, to waive, either himself or by his counsel, the right to be personally present during the trial (Lewis v. United States, 146 U. S. 370, 13 Sup. Ct. 136, 36 L. Ed. 1011); but, giving a bail bond for appearance at the trial is not a part of the trial, and no case has been cited, and we know of none, which

[6] Taylor v. Taintor, 16 Wall. 366, 371, 21 L. Ed. 287. See also Reese v. United States, 9 Wall. 13, 21, 19 L. Ed. 541, and Cosgrove v. Winney, 174 U. S. 64, 68, 19 Sup. Ct. 598, 43 L. Ed. 897.

[7] United States v. Evans (C. C.) 2 Fed. 147, 151; Hunt v. United States, 61 Fed. 795, 800, 10 C. C. A. 74, et seq.; Id., 63 Fed. 568, 570, 11 C. C. A. 340; McLean v. State, 8 Heisk. (Tenn.) 22, 247, 248; Jones v. Gordon, 82 Ga. 570, 571, 9 S. E. 782.

holds that it is. The cases cited in behalf of the surety are beside the point, for they, with one exception, have to do with proceedings in the trial itself.[8]

Hutchinson v. State, 3 Cold. (Tenn.) 95, was a case in which the defendant, convicted of robbery in a circuit court in Tennessee, appealed to the Supreme Court. He secured his release on a bond conditioned for his appearance in the circuit court at the next term after the decision of the appeal by the Supreme Court. It was held that the circuit court ought to have required the defendant to enter into a recognizance for his appearance before the Supreme Court, and that for felonies, as contradistinguished from misdemeanors, the circuit judge, under the statutes of Tennessee, could not admit the accused to bail to appear in the circuit court after the decision of his appeal. The court, following Andrews v. State, 2 Sneed (Tenn.) 550—that the accused "must be present during the trial, and until the final judgment"—was of opinion that on such a bond, the accused being absent, the court had no jurisdiction over his person and could not render any judgment on the appeal, but that the court could (and did) order a capias to issue, to the end that the accused might be brought before the court. Clearly the surety can take nothing from that decision.

In Hopkins v. State, 10 Lea (78 Tenn.) 204, the accused, indicted for murder, petitioned the court for a change of venue, which was granted in the absence of the accused. The court were of opinion that in such a matter the accused could, if within the custody and control of the court, waive his right to be present since "that right in all preliminary steps is personal to the accused and may be waived." See 12 Cyc. 526, note 31.

In Alexander v. United States, 138 U. S. 353, 355, 11 Sup. Ct. 350, 351 (34 L. Ed. 954), error intervened, as afterwards held in another case (Lewis v. United States, 146 U. S. 370, 13 Sup. Ct. 136, 36 L. Ed. 1011, on substantially the same facts), in impaneling a jury in a trial for murder. The error was made the ground of a motion for a new trial, but the court, speaking through Mr. Justice Brown, held that the question was raised too late, saying:

"It is the duty of counsel seasonably to call the attention of the court to any error in impaneling the jury, in admitting testimony, or in any other proceeding during the trial by which his rights are prejudiced, and in case of an adverse ruling to note an exception."

In Givens v. State, 103 Tenn. 648, 55 S. W. 1107, in which the accused was indicted for murder and about to be tried, one Aslinger, after being accepted as a juror, was discharged by the court upon discovery that he was neither a householder nor a freeholder. The defendant was temporarily absent. His counsel was present and fully informed, and, if not actually consenting, at least made no objection.

[8] Lewis v. United States, 143 U. S. 370, 13 Sup. Ct. 136, 36 L. Ed. 1011; Hopt v. Utah, 110 U. S. 578, 4 Sup. Ct. 202, 28 L. Ed. 262; Andrews v. State, 2 Sneed (Tenn.) 550; Witt v. State, 5 Cold. (Tenn.) 11; Clark v. State, 4 Humph. 253, 254; Richards v. State, 91 Tenn. 723, 20 S. W. 533, 30 Am. St. Rep. 907; State v. Mannion, 19 Utah, 505, 57 Pac. 542, 45 L. R. A. 638, 75 Am. St. Rep. 753.

The court were of opinion that counsel's protest after trial was too late, and they should have objected at the time, since, if they had, the court would have postponed action until the accused was present.

It is true that in Lewis v. United States, 146 U. S. 371, at 372, 13 Sup. Ct. 136, at 137 (36 L. Ed. 1011), it was said by Mr. Justice Shiras:

"A leading principle that pervades the entire law of criminal procedure is that, after indictment found, nothing shall be done in the absence of the prisoner"

—yet it will be seen from the context that in making this statement the learned justice had in mind the requirement that the accused must be present during his trial. But, whatever he meant, the point decided in the case was that a prisoner on trial for a felony had not the power, himself or by his counsel, to waive the right to be personally present at his trial, which includes the steps taken in impaneling the jury.

We hold, therefore, that the giving of the bond was not a part of, or a step in, the trial, but is only preliminary thereto, is a privilege to be availed of by the accused, if he desires to avail himself of it and is able to do so, and can be waived by him at his election; further, that it is now too late for the question to be raised.

[16] It is, however, earnestly contended for the surety that in any event he has complied with all the terms of his agreement. He invokes the rule that he can only be liable within the clear and absolute terms of his undertaking, which cannot in any way be enlarged or changed. Granting the application of the rule to such a bond as this (Reese v. United States, 9 Wall. 13, 21, 19 L. Ed. 541), the failure of the surety to make good his promise is easily shown.

[17] The bond was to be void if the principal should make his appearance before the District Court "then and there to answer," etc., "and continue in attendance at said term of said court from day to day and term to term until discharged, and abide the decision of the said court in the premises." When the accused was convicted by the verdict of the jury, he was, upon the statement of his counsel that a motion for a new trial would be filed, and upon his counsel's request in his presence, instead of being remanded into the custody of the marshal, permitted to go upon his old bond; the court being of opinion that it was a "continuing" bond. If the court had pronounced sentence, a different question might be presented, or, if the court had ordered the defendant into the custody of the marshal, perhaps the question would not be in legal effect the same as the question under consideration. But in this case the accused was not discharged, nor did he "abide the decision" of the court, since no judgment was rendered on the verdict, or upon the motion for a new trial.

Whether or not, on principles of estoppel, applied also to this phase of the case, the surety could be held, need not be decided; for, under the terms of the bond as given, the responsibility of the surety was not brought to an end and completed by the conviction itself. The Supreme Court of Tennessee (Suggs v. State, 129 Tenn. 498, 500, 167 S. W. 122, 123) discuss the difference between the rights and obligations of the surety after conviction, but before sentence, and after sentence, and say:

"Where a bail bond stipulates that the principal is not to depart without leave of the court, the sureties are not exonerated by the mere conviction of the principal. * * * But when a conviction is followed by a pronouncement of sentence, such pronouncement, it has been held, has the legal effect of a direction to the sheriff to hold the convicted defendant in custody, and operates to exonerate the sureties."

A number of cases are cited in support of each of these conclusions. No case has been cited, and we have found none, in which, upon a mere conviction, without sentence pronounced thereupon, it has been held that the custody of the accused passed from the surety to the officer who, under the law, would take the accused into his custody. If the case is to be assimilated to the mode of proceeding in Tennessee, all debate on the subject is foreclosed by the statute of Tennesse of 1903 (Acts 1903, c. 99; Shannon's Supp. to Code, 852), which provides that, when such a bond as this has been executed, it—

"shall be valid and binding upon the defendant and his sureties thereon, for the defendant's personal appearance before the court from term to term until the case is finally terminated or stricken from the docket, and the defendant discharged by the court; and the defendant shall not be required to renew said bond or recognizance, unless ordered to do so by the court because of the insufficiency of said bond in amount or the insolvency of the same or on forfeiture of bail, or for other good and sufficient causes; provided that the sureties on said bond may surrender the prisoner and be released on said bond as now provided."

Of course, that provision of the statute is as much a part of the bond as if written into it. If it were so written, however, it would not add to the express agreement of this bond that the accused should attend "until discharged" and "abide the decision of the said court in the premises." The surety, by failing to produce the accused, must pay the penalty for his default.

The judgment of the District Court is affirmed, at the costs of the plaintiff in error.

## On Petition for Rehearing.

The petition for rehearing filed in this case will be denied. The ultimate conclusions reached, as appear in the opinion heretofore filed, were that the offender was properly bailed by the judge, in that the facts warranted the finding that the judge himself was advised of the nature of the offense, that he fixed the amount of the bond and approved the surety, and that in any event the surety is not in a position to deny that the offender was properly bailed. We think these conclusions are right.

We take the opportunity, however, of saying that it was not necessary in the disposition of this case for us to go so far as to express an agreement with that part of the opinion of the Circuit Court of Appeals in the Eighth Circuit in the case of Hunt v. United States, 61 Fed. 795, 10 C. C. A. 74, and 63 Fed. 568, 11 C. C. A. 340, which in effect holds that a bail bond is sufficiently approved when, after the judge has found the offense to be bailable and has fixed the amount of the bond, the clerk approves the sureties upon direction of the judge to do so. The statement, therefore, of agreement with that

part of that opinion, is withdrawn as an authoritative statement of the views of this court on the question involved.

Necessarily the suggestion in the opinion of a course of conduct in bailing offenders to be followed by the District Judges in this circuit may be expunged from the opinion, and also the statement of the practice in the District Court for the Southern District of Ohio, for the reason that the statement was inadvertently made.